[No. 47641–1.   En Banc.   January 14, 1982.]

THE MUNICIPAL COURT OF SEATTLE, *on the Relation of Judd E. Tuberg, Respondent,* v. WILLIAM PAUL BEIGHLE, *Petitioner.*

*Douglas N. Jewett, City Attorney,* and *Susan Rae Sampson, Assistant,* for petitioner.

*Fishel & Seligmann,* by *Eugene D. Seligmann,* for respondent.

UTTER, J.—This case concerns the capacity of the Seattle Municipal Court judges to summarily dismiss a magistrate whom they appointed pursuant to RCW 35.20.205. We affirm the Court of Appeals requirement of a formal charge and hearing in the absence of an appropriate municipal court rule.

Respondent Judd E. Tuberg was appointed magistrate of the Seattle Municipal Court on May 5, 1975, pursuant to RCW 35.20.205 and Seattle Municipal Court Rule 14. On July 27, 1977, Tuberg was suspended from that position and on August 1, 1977, he was terminated as magistrate by the judges of the municipal court. This termination was not preceded by a specific charge, a notice of hearing, and a finding. (Stipulation of parties.) Tuberg was dismissed pursuant to Seattle Municipal Court Rule 13, which does not contain a specific procedure for removal of a magistrate.[1] (Stipulation of parties.)

Tuberg filed this action in the nature of quo warranto on May 1, 1978, challenging his removal by the municipal court judges and his subsequent replacement by petitioner Beighle. The Superior Court granted petitioner's motion for summary judgment, finding that Tuberg's discharge was

---

[1]RULE 13. Monthly Meeting of Judges.

"The judges shall meet once each month at such hour and place as the presiding judge shall designate. The presiding judge shall preside at all such meetings and the judges shall consider such matters pertaining to the administration of justice in the court as may be brought before them. The presiding judge shall prepare an agenda for the meeting and provide a copy for the other judges in advance thereof. At these meetings the judges shall receive and investigate, or cause to be investigated, all complaints presented to them pertaining to the court and the employees thereof, and shall take such action as they deem necessary or proper with respect thereto. They shall at such meeting by majority vote adopt rules for the proper administration of justice in the court."

within the municipal court judges' authority. Tuberg's appeal to this court was transferred to the Court of Appeals on February 27, 1980. On January 12, 1981, the Court of Appeals reversed the trial court, holding that, in the absence of an applicable rule or ordinance governing removal of magistrates, article 5, section 3 of the state constitution permits removal only for "misconduct or malfeasance in office, in such manner as may be provided by law." We granted petitioner Beighle review of the Court of Appeals decision. *Municipal Court ex rel. Tuberg v. Beighle,* 28 Wn. App. 141, 622 P.2d 405 (1981).

The sole issue we must decide is the appropriate method by which the municipal court may suspend or remove a magistrate appointed by it pursuant to RCW 35.20.205.

Initially petitioner Beighle contends that a magistrate is not a "judicial officer" within the meaning of article 5 of the Washington State Constitution. Petitioner's assertion is first contradicted by stipulation of the parties and the language of RCW 35.20.205, both in its reference to magistrates as "judicial officers" and in its discussion of their duties as "judicial in nature."

Nonetheless, petitioner Beighle argues that since a magistrate is not a "judge," a magistrate falls (if at all) within the terms of article 5, section 2, which requires impeachment of a judicial officer. This, of course, would produce a ludicrous result, and so petitioner concludes magistrates should be deemed outside the scope of article 5 altogether. While such a result would indeed be ludicrous, it would also be needless. As a judicial officer within the meaning of article 5, magistrates should be considered "judges of courts not of record," and subject to the terms of article 5, section 3, permitting removal "for misconduct or malfeasance in office, in such manner as may be provided by law."

Magistrates are appointed by the municipal court judges to assume duties "judicial in nature", RCW 35.20.205, and municipal court rule 14(b) requires a magistrate to "qualify for and be appointed as a judge pro tempore of the Seattle

Municipal Court." Although part of a magistrate's function is undoubtedly ministerial, he or she also must serve many of the functions of a municipal court judge. A municipal court judge is a "judge of a court not of record," and is subject to removal pursuant to article 5, section 3. *State ex rel. Carroll v. Simmons,* 61 Wn.2d 146, 152, 377 P.2d 421 (1962). Magistrates are thus appropriately considered "judges of courts not of record" for purposes of treatment under article 5, and are subject to removal pursuant to section 3 of that article.

The authority to establish judicial power in inferior courts is given to the legislature by the state constitution. Const. art. 4, § 1.

█ It cannot be disputed that the constitution gives the legislature power to provide how and by whom magistrates may be removed. *State ex rel. Davis v. Johns,* 139 Wash. 525, 248 P. 423 (1926); *State ex rel. McReavy v. Burke,* 8 Wash. 412, 36 P. 281 (1894). Legislatures may provide for removal of public officers without contravening the provisions of article 5, section 3 of the Washington State Constitution. *Id.* That section states:

> All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law.

If removal is not "provided by law" (an act of the legislature), then article 5, section 3 governs the method of removal. Section 3's requirement of a showing of "misconduct or malfeasance . . . as . . . provided by law" clearly "impl[ies] . . . a charge, a hearing, and a finding" when no legislative act otherwise provides for removal. *State ex rel. Evans v. Superior Court,* 92 Wash. 375, 380, 159 P. 84 (1916).

Unlike in *Evans,* here the legislature intended that removal of magistrates be by the municipal court. While the legislature made no explicit provision for removal of magistrates by the municipal court, neither party questions that the power of removal resides with that court. Through RCW 35.20.205, the legislature stated the judges of the

municipal court "may employ judicial officers to assist in the administration of justice", whose duties "shall be fixed by court rule as adopted by the municipal court judges or fixed by ordinance of the city." The municipal court is given broad authority by RCW 35.20.205 to decide whether to employ magistrates and to adopt rules governing their responsibilities and conditions of employ. *Municipal Court ex rel. Tuberg v. Beighle, supra* at 145. We must decide in what manner the municipal court's power may be exercised.

There are at least four possible varieties of "process" by which the municipal court may dismiss a magistrate.

The first position is that supported by petitioner Beighle. Petitioner claims that since the municipal court is given broad discretionary powers with respect to magistrates and since there is no question that the municipal court has power to dismiss respondent, it may do so in summary fashion through operation of rule 13. That rule provides municipal court judges "shall receive and investigate . . . all complaints . . . pertaining to . . . employees [of the court], and shall take such action as they deem necessary or proper with respect thereto."

The second position is respondent's on appeal.[2] Respondent apparently agrees with petitioner that dismissal may be summary. He states, however, that such dismissal must be by a rule which specifically addresses such dismissal. Since the parties have stipulated that rule 13 does not specify a procedure for removal, respondent argues rule 13 is inadequate. In the absence of an explicit rule governing dismissal, respondent agrees with the Court of Appeals that his "summary removal without a formal charge and hearing was in violation of article 5, section 3 of the Washington State Constitution." *Municipal Court ex rel. Tuberg v. Beighle, supra* at 145.

---

[2]The first time that respondent explicitly concedes that the municipal court is empowered to summarily dismiss magistrates by appropriate court rule is in his answer to the Petition for Review, at page 2, where he states the municipal court is authorized to make a rule providing that magistrates "serve at the pleasure of the judges."

The third position belongs to the Court of Appeals. The Court of Appeals disagrees with petitioner and respondent that dismissal may be summary. It states:

Consistent with article 5, section 3, rules may be adopted to provide that a failure to meet these responsibilities would make a judicial officer "subject to removal for misconduct or malfeasance in office".

28 Wn. App. at 145. Since no such municipal court rule exists, removal was not otherwise "provided by law" and the Court of Appeals required a formal charge and hearing pursuant to article 5, section 3.

The fourth position may be termed the petitioner's interpretation of the Court of Appeals holding. That position would require a magistrate to be given the basis of removal, in the form of specified charges, notice, a meaningful opportunity to respond, and a finding on specified charges. This requirement of process would obtain whether or not it was articulated in a municipal court rule.

As to the fourth position, there is no basis for uniformly requiring notice and hearing for dismissal of magistrates. Both respondent and the Court of Appeals would require such process only in the absence of an appropriate municipal court rule. Neither would require that such process be contained in the municipal court rule.

The Court of Appeals does place restrictions on the nature of the "appropriate" municipal court rule, however. It infers these restrictions from the terms of RCW 35.20-.205 itself. Since the statute does not explicitly give the municipal court power of summary removal, the appellate court reasonably inferred that the nature of the municipal court's power to remove magistrates must be derived from its rule–making power. Since the municipal court has the statutory power to define the responsibility of a magistrate, the Court of Appeals concluded that removal should be based on inability to fulfill those responsibilities. It thus required the municipal court to promulgate rules articulating these responsibilities and the basis for removal of magistrates. The Court of Appeals conclusion seems quite

plausible.

The respondent's position, on the other hand, is untenable. He concedes that summary removal is permissible but there must be a rule explicitly providing process for such removal. We must ask of respondent to what kind of process does he refer. Summary removal, after all, is essentially a lack of process. What would respondent gain from a rule stating that the municipal court employs him at its pleasure? What notice or security would he gain from such a rule? If removal may be summary, it would seem that petitioner is quite right in arguing rule 13 is adequate. While it does not specify a procedure for removal, removal of a summary nature does not require such a procedure.

The only tenable positions are those of the Court of Appeals and petitioner Beighle; and these two positions are not so contradictory as they might seem. Both agree the municipal court may remove magistrates. Both agree that removal must be by court rule. Both agree that the rule need not provide notice or hearing. Both agree implicitly that the municipal court decision may be unilateral and unappealable. Yet in attempting to derive the intent of the legislature regarding the requirements for removal of magistrates by the municipal court, both arrive at different results.

In determining the manner in which removal of a public officer may occur, one commentator has stated:

[T]he court must frequently consider the nature of the office, the duty of the removing authority with reference thereto, and whether or not the legislature contemplated that it might be necessary promptly to remove an officer in the absolute discretion of the removing authority, notwithstanding it was not contemplated that an officer should be deprived of his position unreasonably.

Annot., *Power To Remove Public Officer Without Notice and Hearing,* 99 A.L.R. 336, 349 (1935).

In our view, the Court of Appeals approach is the more reasonable one. Facing the silence of RCW 35.20.205 as to the removal of magistrates, the Court of Appeals

inferred the power of removal resided in the municipal court and that such power existed by virtue of the municipal court's power to articulate by rule the responsibilities of magistrates. Consequently, removal of magistrates may not be summary and unreasoned. It must be based on failure to fulfill the duties that define the magistrate's role. At the same time, the Court of Appeals holding leaves the municipal court considerable flexibility in administering justice. It has broad discretion in promulgating rules defining the responsibilities of magistrates and establishing the basis for removal when such responsibilities are not fulfilled. The Court of Appeals holding denies the municipal court only one thing: the power to arbitrarily deprive a judicial officer of his or her position. There is no reason why the legislature would have deemed it necessary for the municipal court to have such power of summary removal of a judicial officer. The administration of justice in the Seattle Municipal Court would be served in no way by conferral of such unreasoned power. The only valid reason for dismissing a magistrate is for failure to fulfill the requirements of the job, and the municipal court is fully empowered to promulgate a rule authorizing dismissal on such a basis.

The parties to this case stipulated that respondent Tuberg

> discharged his duties as magistrate in accordance with all published Seattle Municipal Court rules, ordinances of the City of Seattle, and laws of the State of Washington.

Relator's Request Nos. 3 and 4. Thus, we can only conclude upon this record that his dismissal was arbitrary. The municipal court might well have had a good reason for dismissing respondent Tuberg; however, it was not stated in the record. The judges of that court are authorized to promulgate rules which define the responsibilities Tuberg violated and what constituted the basis for removal. An institution whose heritage is one of justice should reflect that in its actions toward its own judicial officers.[3] The

---

[3]The mayor is given power of summary removal of judges pro tempore by vir-

need for reasoned dismissal is underscored when such dismissal involves a judicial officer. By requiring the municipal court to promulgate rules defining ministerial responsibilities which if not met would provide the basis for removal, magistrates are less "the subject[s] of the whim or caprice of the appointing power." *State ex rel. Evans v. Superior Court,* 92 Wash. 375, 380, 159 P. 84 (1916).

In the absence of such an appropriate municipal court rule, "Tuberg's summary removal without a formal charge and hearing was in violation of article 5, section 3 of the Washington State Constitution." *Municipal Court ex rel. Tuberg v. Beighle,* 28 Wn. App. 141, 145, 622 P.2d 405 (1981).

We affirm the Court of Appeals.

STAFFORD, DOLLIVER, HICKS, and DORE, JJ., concur.

DIMMICK, J. (dissenting)—I respectfully disagree with the majority's holding that Seattle Municipal Court judges may not summarily discharge a magistrate hired by them under the existing statutes and rules. I would uphold the dismissal of Tuberg as being within the municipal court judges' authority and thus entirely proper.

The statute authorizing the position of magistrates, RCW 35.20.205, provides in part that judges of municipal courts "*may employ* judicial officers to assist in the administration of justice and the accomplishment of the work of the court . . ." (Italics mine.) The relationship between the magistrate and the municipal court is, therefore, employee/employer. Another statute imposes a duty upon the judges to hold monthly meetings and "receive and investigate, or cause to be investigated, all complaints presented to them pertaining to the court and the *employees* thereof, and *shall take such action as they may deem necessary or*

tue of RCW 35.20.200. We do not reach the constitutionality of such provision. However, since a prerequisite to serving as a magistrate is to be appointed a judge pro tempore, we must conclude the mayor's power of removal of judges pro tempore who are also magistrates is similarly limited by our holding in this case.

*proper with respect thereto.*" (Italics mine.) RCW 35.20-.140. The majority fails to mention the latter statute, although it does set forth rule 13 of the Seattle Municipal Court containing identical language.

RCW 35.20.140 and rule 13 empower the municipal court judges to exercise broad discretion in dealing with matters pertaining to the court. Contrary to the majority's conclusion, the statutes and rules by their own terms permit the judges to summarily dismiss their employees, including magistrates. Such dismissals may in fact be the only action the judges deem necessary or proper. This broad discretion granted by the legislature is absolutely necessary since the judges are responsible to the electorate and in order to fulfill such responsibilities the judges must control the actions of their employees.

I cannot agree with the majority's statement that the only conclusion which may be drawn from the record is that Tuberg's dismissal was arbitrary. Majority, at 760. According to the stipulated facts Tuberg was informed on December 20, 1976, that he was being placed on probationary status. A municipal court judge showed Tuberg a written complaint charging him with a lack of judicial temperament and alluding to other charges. The judge orally informed Tuberg that any additional complaints would result in termination. On July 27, 1977, Tuberg was suspended and then on August 1 he was terminated. It is as likely to assume from this course of events that additional complaints regarding Tuberg's performance were received as to conclude as does the majority that his dismissal was arbitrary.

The majority holds at page 760 that the removal of magistrates "must be based on failure to fulfill the duties that define the magistrate's role" and requires that such duties be set forth in a rule. This requirement, when read together with the majority's finding that magistrates are judicial officers can only lead to an unreasonable result. An example of the difficulty with such a requirement may be drawn from this case. Tuberg was charged with a lack of "judicial

temperament"—a quality judges must exhibit in order to remain in office. How can "judicial temperament" be defined in a rule? I submit that a definition would indeed be difficult if not impossible.

I would therefore reverse the Court of Appeals and affirm the Superior Court.

BRACHTENBACH, C.J., and ROSELLINI and WILLIAMS, JJ., concur with DIMMICK, J.