[Civil No. 3072.   Filed July 13, 1931.]

[1 Pac. (2d) 340.]

COUNTY OF APACHE, Appellant, v. H. G. UDALL
and DORINDA UDALL, His Wife, Appellees.

Mr. Dodd L. Greer, County Attorney, for Appellant.

Mr. W. E. Ferguson and Mr. J. Smith Gibbons, for Appellees.

LOCKWOOD, J.—The county of Apache, hereinafter called plaintiff, brought suit against H. G. Udall and Dorinda Udall, his wife, hereinafter called defendants. The complaint in substance alleges that defendants are the owners of certain land in Apache county; that for the purpose of properly conducting its affairs it is necessary for plaintiff to acquire an easement over the property of defendants for the construction and maintenance of a road thereon; that plaintiff and defendants are unable to agree as to the compensation to be paid therefor, and that this proceeding is instituted for the purpose of condemning such easement under the provisions of chapter 23, Revised Code of 1928.

Defendants appeared specially for the purpose of objecting to the jurisdiction of the court, but after-

wards filed a general demurrer, which of course waived the plea to the jurisdiction of the person. The demurrer was sustained, and, plaintiff refusing to amend and defendant moving for the dismissal of the action, it was so ordered, and from the orders sustaining the general demurrer and dismissing this action this appeal was taken.

The action was avowedly brought under the provisions of sections 1329–1349, Revised Code of 1928, inclusive, which cover the general subject of eminent domain, and compose chapter 23 of that Code. Section 1329, *supra,* so far as we need consider it for our present purpose, reads as follows: "Subject to the provisions of this chapter, the right of eminent domain may be exercised by . . . a county . . . for the following uses . . . toll-roads, by-roads, plank and turnpike roads and *highways.* . . . " (Italics ours.) Section 1335, *supra,* reads in part as follows: "Uses for which may be taken. Before property can be taken, it must appear that the use to which it is to be applied is a use authorized by law; that the taking is necessary to such use. . . . " While section 1338, *supra,* contains the following language: "Complaint; contents. The complaint must contain . . . a statement of the right of the plaintiff. . . . " The remainder of the chapter deals with the manner in which the right of eminent domain is to be exercised, which is, generally speaking, that which is attempted to be followed by plaintiff in this action.

We are of the opinion that under the language of sections 1335 and 1338, *supra,* when it is sought by a county to condemn a right of way for a "highway" under section 1329, *supra,* the complaint must show affirmatively that the steps necessary to establish a legal highway already have been taken. This may be done either by the direct allegation that the proposed road is of that character, or a statement of facts which show that as a matter of law it is. Since

the complaint herein nowhere contains either form of allegation, the court properly sustained the general demurrer on the ground that the complaint did not state a cause of action under chapter 23, *supra,* and we might well affirm the order dismissing without any further discussion.

But counsel for plaintiff and defendants in their briefs both assure us that the real question before the trial court, and on which it based its ruling, was whether boards of supervisors are limited in condemning easements for county highways to the method of procedure set forth in section 1701, Revised Code of 1928, or whether they might also avail themselves of the provisions of chapter 23, *supra.* It is to be regretted that the pleadings were not drawn and the issues framed so that they specifically raise that question. But in view of the statement of counsel and the extreme importance of an early determination of the question, we shall assume for the purposes of the remainder of this decision that it is properly before us on this appeal.

Section 1701, *supra,* which it is contended by defendants is the only method under which supervisors may establish or alter highways for counties and condemn and appropriate public or private property therefor, is quite lengthy. It may be summarized as follows:

A petition must first be presented to the board of supervisors by ten or more resident taxpayers, or the governing body of a legal subdivision of the county, praying that the highway be established or altered, and giving the beginning, terminus, and general course or direction of the proposed highway. The board may reject the petition if it desires, or if it approves it, the following procedure is then followed: The county engineer is directed by the board to make a survey of the proposed highway and file a report of the survey, together with a map thereof. A day is

set for a public hearing on the petition, and notice is given to all persons affected, in the manner provided in the statute. At the hearing the board considers the feasibility, advantages, and necessity of the proposed highway, and if in its opinion it is a public necessity the establishment thereof is approved and a board of appraisers is appointed, who appraise the property damage caused by the highway in the manner set forth in the section. The report of the appraisers is considered by the board in the statutory manner, and the petition is then either rejected or granted finally. When such final resolution and a map of the highway is filed in the office of the county recorder, it is then deemed to be established. An appeal may be taken by any claimant of compensation to the superior court in the manner provided by the statute, but the trial thereon goes only to the question of damages, and not to the establishment of the highway.

It will be seen by comparing this procedure with the provisions of chapter 23 that it is a special and carefully defined one for the specific purpose of establishing, altering or abandoning county highways, and securing rights of way thereto. We have held in the cases of *Territory* v. *Richardson,* 8 Ariz. 336, 76 Pac. 456, *Tucson Consolidated Copper Co.* v. *Reese,* 12 Ariz. 226, 100 Pac. 777, and *Champie* v. *Castle Hot Springs Co.,* 27 Ariz. 463, 233 Pac. 1107, that this was the only method of establishing public roads in Arizona at the time of the different decisions, although the Code in force then, in each case, contained in substance both the provisions of chapter 23 of the 1928 Code on eminent domain, and of section 1701, of the same Code, in regard to the establishment of roads by supervisors.

We are not unmindful of the fact that the Supreme Court of California, in the cases of *Adamson* v. *Los Angeles County,* 52 Cal. App. 125, 198 Pac. 52, and

*Los Angeles County* v. *Rindge Co.*, 53 Cal. App. 166, 200 Pac. 27, held that in California boards of supervisors might establish highways and condemn rights of way therefor under the provisions of their statute which are generally similar to section 1701, *supra,* and also of those resembling chapter 23, *supra.* It appears, however, that in California section 4041 of the Political Code, which covers the general powers of supervisors, provides: ''The boards of supervisors . . . shall have jurisdiction and power . . . to acquire and take by . . . condemnation . . . land for the uses and purposes of public roads, highways. . . . '' And the decision in the Adamson case was expressly based, to a great extent, at least, on that provision. No such provision appears in the Arizona Code. Section 1241 of the Code of Civil Procedure of California is similar to section 1335, *supra,* so far as we have quoted the latter section above; but it has added thereto a clause which in substance authorizes boards of supervisors to determine the necessity of public use, and makes their resolutions conclusive evidence of that fact, and that the proposed improvement is located in the manner which will be most compatible with the greatest public good.

We are of the opinion, in view of the difference in the statutes of the two states and the rule already declared by us in the cases above cited, that the exclusive method by which boards of supervisors may establish county highways, or alter or abandon them when they are already established, is set forth in section 1701, *supra.* It is true that after the decision of the Champie case, *supra,* and in the year 1927, the legislature of Arizona provided another method of establishing public roads in chapter 2, 4th Special Session, 8th Legislature, commonly known as the Highway Code, which was re-enacted in a slightly different form as chapter 31, Revised Code of 1928. According to that chapter the highway commission

is given certain powers relative to establishing public roads. We quote them as follows:

"Section 1561. Powers and duties of commission. The commission shall: 1. Lay out and establish a complete system of state routes; issue a map showing such routes; determine what state routes or portions thereof shall be accepted as state highways; and what state routes or portions thereof shall be improved at the expense of the state; 2. direct the state engineer to establish, open, relocate, alter, widen, change, vacate or abandon any portion of a state route or state highway. . . . "

"Section 1567. State routes and state highways. The state highways, to be known as state routes, shall consist of the highways heretofore declared to be state highways, under authority of law, which the commission may add to, or abandon or change. The state highways shall consist of such parts of the state routes as are designated and accepted as state highways by the commission. No highway which has not been designated as a state route shall become a state highway, nor shall any portion of a state route become a state highway until it shall have been specifically designated and accepted by the commission as a state highway, and ordered constructed and improved.

"Section 1568. Notice of intention to designate a state highway; limitation on designation; duty of maintenance. Not less than two weeks prior to the designation and acceptance by the commission of any state route, or portion thereof, as a state highway, the commission shall give notice to the board of supervisors of the county in which said proposed highway lies, of the intention of the commission to consider said designation, and the said board may appear before the commission and be heard in the manner of such proposal. Such board may also petition the commission to take over and designate a state route as a state highway. Until designated and accepted as state highways, all state routes shall be county highways, and shall be constructed, improved and maintained as such, except as otherwise provided in this chapter. No part of any state route shall be taken over or designated as a state highway, until funds

for the improvement of the same are provided in the budget of the commission, but when so designated and accepted by the commission, such highway shall thereafter be maintained by the department.''

The commission is expressly given the right of eminent domain for the purpose of acquiring lands needed for state highways. It is somewhat difficult from the sections above quoted to determine the precise difference between a "state route" and a "state highway." The original Highway Code of 1927 defines the two terms as follows:

" 'State route' shall mean any right of way, whether actually used as a highway or not, designated by the Commission as a location for the construction of a State Highway.

" 'State Highway' shall mean any State route, or portion thereof, accepted and designated by the Commission as such, and maintained by the State, as provided in this Act." (Laws 1927, 4th Sp. Sess., chap. 2, subchap. 1, § 2.)

And presumably the same definitions were meant to apply in the 1928 Code, though they are not expressly set forth therein.

Sections 20 and 21 (subchapter 2) of the Highway Code of 1927 were apparently consolidated and revised as section 1567, *supra*. We quote them as follows:

"Section 20. A system of proposed State highways, to be known as state routes, is hereby established. Said system shall consist, in the first instance, of the highways heretofore constituting or declared to be State Highways, under authority of law, but the commission shall have full power to abandon or change any part of the same to add thereto; provided, that any action of the commission, with reference to the location, relocation or abandonment of highways constructed in co-operation with any department of the United States Government, shall be in strict conformity with the Acts of Congress relating thereto.

"Section 21. A system of State Highways, to be improved and maintained, as hereinafter provided, is also hereby established. Said system shall consist of such parts of the State routes as are designated and accepted as State highways by the commission; no highway which has not been designated as provided in this act as a State route shall become a State Highway, nor shall any portion of a State route become a State Highway until, by a proper resolution, it shall have been specifically designated and accepted by the commission as a State highway, and ordered constructed and improved."

Taking all of the above sections together, we are of the opinion that the "state routes" consist of the highways declared to be state highways under the law as it existed before the adoption of the Highway Code, together with such additional roads as should be designated by the commission for future development as state highways, but which it was not then prepared to construct and maintain; while "state highways" were such portions of state routes as above defined as the commission was prepared to construct and maintain, and therefore declared to be state highways. State routes, under the statute, after being designated by the commission, have the legal status of county highways for certain purposes until they are raised to the rank of state highways by appropriate action, and during such period are to be "constructed, improved and maintained as county highways." They may not, however, be altered or abandoned except by the authority which created them.

We are of the opinion that when a road has been formally designated as a state route by virtue of section 1567, *supra,* boards of supervisors, in improving the same and acquiring rights of way therefor, may follow the provisions of chapter 23, *supra,* but with that exception, all county highways must be estab-

lished and easements for rights of way acquired under section 1701, *supra*.

The judgment of the superior court of Apache county is affirmed.

McALISTER, C. J., and ROSS, J., concur.